*********
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; to receive further evidence or to rehear the parties or their representatives; accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 *********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Commission and the Commission has jurisdiction of this matter.
2. The parties are subject to the North Carolina Workers' Compensation Act.
3. An employee-employer relationship existed between the parties.
4. The carrier liable on the risk is correctly named.
5. All parties are correctly designated.
6. The date of injury is April 12, 2004.
7. The average weekly wage of plaintiff based on the Form 22 is $259.90, yielding a compensation rate of $173.28.
8. The parties stipulated into evidence Stipulated Exhibit 1, which were the plaintiff's medical records; stipulated exhibit 2 which was the Form 22 and other Industrial Commission forms; stipulation exhibit 3 which were the interrogatories of plaintiff; and stipulation exhibit 4 which is photographs of three items including a nut cracker, knife, and dulcimer which were made by plaintiff.
 *********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was 36 years old.
2. The plaintiff was hired by defendant-employer in 2001. Plaintiff initially worked as a boring machine operator but he operated other pieces of machinery that were located in the *Page 3 
machine room. Plaintiff was familiar with all the machines in the machine room and ran all of them on occasion on a fill-in basis including the cut-off saw, boring machine and side stroke machine.
3. Marvin Eller was plaintiff's immediate supervisor. Mr. Eller testified at the hearing before the Deputy Commissioner that he was in the machine room and on the work premises ninety (90%) percent of the time.
4. On the work site, the cut-off saw was visible and if someone was using it, it was very apparent to any of the employees or supervisors who may come and go during break times or at other times. The machine room was approximately 150" x 40" and approximately 12 to 15 employees worked there as part of their usual duties. Employees were allowed to cut pieces of scrap either at break or when they were caught up with their work, including Jeremiah Coffey, Ronnie Greer, Dale Porter and Ralph Annis.
5. The scrap wood also was in a very visible and obvious location and it was very easy for people to obtain pieces of the scrap. Scott Honeycutt testified at the hearing before the Deputy Commissioner that he also was allowed to cut pieces of wood and he was familiar with the fact that plaintiff was given permission to work on the other machines in the machine room.
6. Scott Honeycutt, plaintiff's co-worker, testified that Marvin Eller allowed him to get pieces of scrap and he observed others cutting up pieces that they were provided on their own time. The wood that plaintiff was provided was given with Mr. Eller's permission.
7. Plaintiff had cut various pieces of wood for years, and had made many items including a turkey call, birdfeeders, and crosses for Jeremiah Coffey and other employees at the Plant. *Page 4 
8. On April 12, 2004, plaintiff reported to work for defendant and punched in at approximately 7:00 a.m. He worked up until break time, which was at about 9:30 a.m. Plaintiff then asked Mr. Eller, if he could have some scrap wood. Plaintiff was allowed to obtain the scrap and to go to the cut-off saw that was located in the machine room. While plaintiff was cutting up the scrap, the scrap burst and pulled plaintiff's hand into the saw cutting off the end of his left thumb. Dale Porter, a co-employee, took plaintiff to the hospital.
9. Plaintiff had surgery to re-attach his thumb on April 12, 2004. On April 13, 2004, plaintiff called Mr. Eller to report the status of plaintiff's surgery but Mr. Eller terminated the plaintiff from his employment without an explanation.
10. The owner of the company, Danny Kincaid, was not present at the work site at the time of the plaintiff's injury. However, Mr. Kincaid testified at the hearing before the Deputy Commissioner that even though he was aware that employees were working with wood on their own time, he did not terminate any of the other employees including Jeremiah Coffey, Ronnie Greer, Dale Porter or Ralph Annis. He stated that all were still employed by him and only Jeremiah Coffey had left to seek other employment.
11. Defendants admitted that they freely gave scrap wood to the employees of the Plant and that scrap wood had to be hauled to the dump and disposed of if it were not taken by the employees.
12. There was no indication that plaintiff had ever been written-up regarding his work except on a couple of occasions for talking too much, and Mr. Eller indicated that he was a good worker.
13. At the time plaintiff was injured, he was on the defendant's payroll and was using a piece of machinery that was owned by defendant. *Page 5 
14. The evidence of record establishes that the plaintiff, as well as other co-employees including Scott Honeycutt, Jeremiah Coffey, Ronnie Greer, Dale Porter and Ralph Annis, had been allowed to cut pieces of wood on their own time either at break or when they were caught up on previous occasions. The evidence of record further establishes that if the defendant had any policy relative to employees cutting wood on their own time, it was totally disregarded in the past. It was general knowledge that plaintiff's activities and the activities of the other employees had been going on for awhile.
15. The Full Commission finds that the defendant derived a direct benefit from the plaintiff's and the other employees' use of the scrap wood in that defendant's costs for the disposal of the waste or scrap wood were defrayed. The Full Commission further finds that defendant totally acquiesced in the conduct of plaintiff.
16. As a result of plaintiff's injury, he came under the care of Dr. John T. McCormick. Plaintiff had three surgical procedures performed on his left thumb including a re-attachment that was performed on his thumb on April 12, 2004 and subsequent surgical procedures that were performed on August 6, 2004 and November 10, 2004 at Caldwell Memorial Hospital.
17. Plaintiff was out of work under the doctors' care from April 12, 2004 through December 23, 2004.
18. Plaintiff sustained a twenty-five (25%) percent permanent partial impairment rating to his left thumb and was able to return to gainful employment on January 5, 2005.
 * * * * * * * * * * *
The foregoing Stipulations and Findings of Fact engender the following additional: *Page 6 
 CONCLUSIONS OF LAW
1. On April 12, 2004, plaintiff sustained a compensable injury by accident to his left thumb while in the course and scope of his employment with defendant-employer. N.C. Gen Stat. § 97-2(6).
2. Plaintiff is entitled to receive temporary total disability payments in the amount of $173.28 per week beginning April 13, 2004 and continuing until plaintiff returned to work on January 5, 2005. N.C. Gen. Stat. § 97-29.
3. Plaintiff is entitled to payment of permanent partial disability in the amount of twenty-five (25%) percent of this left thumb, or the payment of 18.75 weeks of benefits at his compensation rate of $173.28. N.C. Gen. Stat. § 97-31.
4. Defendant shall pay all medical treatment, which was reasonably required to effect a cure for plaintiff including payment of medical services provided by Dr. John T. McCormick and Caldwell Memorial Hospital. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
The foregoing Stipulations, Findings of Fact and Conclusions of Law engender the following:
 AWARD
1. Plaintiff is entitled to have defendants provide temporary total disability compensation at the rate of $173.28 from April 13, 2004 to January 5, 2005. Compensation accrued shall be paid to plaintiff in a lump sum subject to the attorney's fees awarded below.
2. Plaintiff is entitled to receive from defendants 18.75 weeks at his compensation rate of $173.28 for permanent partial disability to his left thumb. Compensation accrued shall be paid to plaintiff in a lump sum subject to the attorney's fees listed below. *Page 7 
3. Defendants shall pay all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury including medical services provided by Dr. John T. McCormick and Caldwell Memorial Hospital.
4. A reasonable attorney's fee in the amount of twenty-five (25%) percent of the compensation benefits awarded under paragraph 1 and 2, shall be paid by defendants to plaintiff's counsel.
5. Defendants shall pay the costs in this matter.
This the ___ day of June 2007.
 S/______________________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER
 S/______________________ BUCK LATTIMORE CHAIRMAN. *Page 1